Good morning. May it please the Court, my name is Stacey Tolchin and I represent Petitioner Bains. I would like to reserve five minutes of my time for rebuttal. Petitioner has lived in the United States for more than 20 years and has never had a hearing before an immigration judge on his application for asylum. The reason for this is a 1996 in absentia order that was issued because he was late to court, he got the times confused, but the judge was still on the bench. The judge refused to allow him to reopen the case. He now presents two different paths to reopen the case. The first is reopening for changed circumstances and the second is reopening or reissuance of the decision for purposes of judicial review. Counsel, when you just said the judge refused to allow him to reopen, were you speaking of the IJ? Right. The judge, he filed a motion to reopen for exceptional circumstances. The judge said, you forgetting the dates or forgetting the times is not an exceptional circumstance. And then he filed a motion for reconsideration, right? He filed an appeal of that to the board. The board ruled in 19- Didn't the lawyer he hired file a motion for reconsideration? After the board dismissed the appeal, then the lawyer filed a motion to reconsider. That was untimely. Okay. In November of 97, yeah. That was the new lawyer. Right. Mary Fagan, yes. The first issue is the regulation at 1003.2C. The regulation states that a movement must show changed circumstances arising in a country of nationality in order to reopen a case. That regulation was promulgated in April of 1996 before the enactment of IHRA-IHRA. So we've read the briefs and we know about that argument. Why is there a difference in the standard between the regulation and the statute that makes any difference in this case? So, Your Honor, there's four reasons. The first is that Congress was aware, presumably, of the regulation when IHRA-IHRA was enacted and chose to use a different standard. Why do we think that is lower? Why do we think the one standard is lower in a way that matters at all here? I think the regulation at 8 CFR 208.4A4I, that's the regulation that looks at the changed circumstances statute for asylum. And it defines changed circumstances. It defines changed circumstances to say any circumstances that materially affect the applicant's eligibility for asylum. That's the definition. And then there's enumerated grounds underneath that. One of those enumerated grounds is changed country conditions. And so even the agency seems to identify changed circumstances as a broader standard than changed country conditions. The other thing that's notable is the amendments that were made to the regulations before the immigration judge. The judge regulation for motions to reopen uses this changed country condition standard, but the board regulation was never modified. So the board regulation refers to deportation cases, while the judge regulation refers to removal cases. So even the agency seems to identify a different standard between changed country conditions. Why do we think one of them is lower? Right. And going again to the definition in 208.4A4, it really does say a changed circumstance is something that materially affects eligibility. Here, changed circumstance in the native country. So what case law do we have? The BIA, to sort of cut to the chase, said, look, these are your changed personal circumstances. Since you came to this country, you've been very politically active, and your country of origin doesn't like that, and you think you're getting through. I know that I'm condensing your facts, but what's your strongest case law for your position, which is that he can rely on, the petitioner can rely upon his activity in this country to show change of circumstances? I think the Malte decision is the strongest case. Okay. Malte basically is a very similar case. It says the asylum claim is going to be similar to whatever the new circumstances are. The difference is, does the new evidence establish a prima facie claim where the prior evidence did not? So it's a qualitative difference. It is. All right. And so your argument, it seems to me, is that the qualitative new news, because the Sikhs have been persecuted consistently, I think is your position, and the record seems to demonstrate that, but he's had continued threats, perhaps increasing since he's been in this country, and then he had this friend who came to visit him here and then was attacked after returning. What's the best evidence that that attack had anything to do with visiting your client? The statement from Baljinder Singh says that he was asked about petitioner. He refused to respond. Was that in the course of the attack? Where do I see that? That's what I couldn't get. Sure. That's in 206 of the record. Okay. And he explains he was with petitioner in the U.S. in May of 08 and returned in July, and three weeks later two men came to him and started questioning him. So that's all in the record at 206, and then, of course, in petitioner's declaration as well. Okay. Continuing on, if the court finds that the changed circumstances requirement doesn't apply here, there's also an issue because this is a deportation case. So for deportation cases, Congress never spoke to a motion to reopen requirement. Congress instead provided that individuals have a right to asylum, withholding of deportation, and CAT. And later they changed that to say for reopening after removal order you have to show changed country conditions. But here there's a due process issue, and this is laid out in the briefing. Here, I mean, the irony is that in a case like this, petitioner could leave, go to Canada or Mexico, come back in and get a brand-new asylum hearing. Right? He's in a situation where this new evidence has been supplied but isn't able to get a hearing, and that's a problem under the stowaway cases. There's a line of cases, Selkirka v. Carroll, Chun v. Zava, all basically saying, where Congress has provided a statutory right to asylum, there must be a procedural mechanism to have a hearing before an immigration judge. That asylum is too important to just dismiss based on the papers. And while that may, analysis may change where Congress restricts the right for removal cases because it's a deportation case, due process is implicated here. Going to the latter part of the argument as far as a reissuance of the decision, the basically petitioner sought reissuance of the decision due to ineffective assistance of counsel. The board said we don't find evidence of ineffective assistance of counsel and we don't find evidence of due diligence. What if we do? Do we have to remand for finding a prejudice? I mean, I think on the record, it's pretty clear that he came when court was in session, the record before the original motion to reopen, and then the motion to reopen for ineffective assistance of counsel. The case law under Romani, Perez, and Gerizano is pretty clear that when you come to court and the judge is still there, that you have not failed to appear, and so you don't need to make a showing of ineffective assistance, I'm sorry, of failure to appear or exceptional circumstances. We're talking right past each other, and I'm probably the one not understanding, but my question was if we think there was ineffective assistance for failing to appeal, the first lawyer did not appeal, do we have to remand for finding a prejudice? Right, and I'm saying I think the record is clear on its face and under the law that there is prejudice, and I don't think that a remand on that issue is required. Obviously, a remand is required, though, to issue the decision. What's the strongest support for your position that there is sort of per se prejudice here? Maybe per se ineffectiveness, you know, in prong one, but what about prong two? Perez. The Perez case that Your Honor authored is a very similar case. The petitioner comes late to court. The court says I.J. was on the bench. You did not fail to appear. If there is nothing further, then I will save the rest of my time for rebuttal. Thank you. Good morning again, Your Honors. Jeffrey L. Mencken, U.S. Department of Justice for the Attorney General. May it please the Court. Your Honors, the Board did not abuse its discretion in denying Mr. Bain's motion to reopen, which was filed 11 years untimely. I think there are two issues here that merit discussion, and that is whether the record compels a finding of changed circumstances in India that would excuse the untimely motion to reopen, and whether the Board abused its discretion in finding that he didn't act with due diligence in bringing his ineffective assistance claim. And going to those, I would note that the terms changed circumstances and changed country conditions are used interchangeably, even by this Court. In Goh v. Holder very recently, the Court referred to a showing of worsening country conditions to show changed circumstances within the regulation. It said the same thing in Chandra recently. Counsel, could I interrupt? If I agree with you about that, then what happens? Why is opposing counsel wrong to say that even though, well, her argument basically is that there's a qualitatively increased change in the threats in India, that the situation in India is qualitatively more dangerous to him than is evidenced by what happened to his friend? I think we can cut straight to the chase, Your Honor, and discuss whether factually there was a showing of changed circumstances in India. Now, in Chandra, the Court recently said that a change in personal circumstances can be made relevant by a change in country conditions. But even then, the Board did the analysis and said that Mr. Baines has not shown that conditions for Sikh activists in India were any different. They may have continued or they may have even gotten better, but persisting conditions are not worsening conditions. There's no qualitative difference in the evidence. Okay. So I think her best argument is that opposing counsel's best argument is that there's certainly a showing of ongoing, I think, it doesn't seem to be contested in the briefing, a showing of ongoing persecution of Sikhs, and that the difference, the qualitative difference is now there's been a direct threat as to him individually, and that seems to have been carried out at least vis-à-vis his friend. What about that? Well, the problem with the Balwinder Singh affidavit in the record at 206 is he never said who the people who attacked him were. There's no indication as to why. They just come at him in the street, they want to know the whereabouts of Mr. Baines, and they want to know contact information, and that's it. Now, since nexus is key, there has to be, even if we go to the Supreme Court's decision in Elias Zacharias, if motive is criminal, he must provide some evidence of it, direct or circumstantial, and there's nothing there. There's no plus sign in the equation. Now, to Mr. Baines himself, his original claim back in the 90s was that he was a Sikh activist in India, and that was his original claim, and essentially he's still claiming, I am a Sikh activist, and there's no worsening, there's no qualitative difference. Well, the worsening is now people, he says, he says, and now people are threatening to kill me. Well, we don't know that because it all comes down, it all comes down to the Balwinder Singh being. Don't we have to treat those allegations as true for purposes at this juncture? Well, even if they're true, and I've. . . So is that a yes? I think that's a major concession, but I'll say even if they're true, we get to the plus in the equation. A person he knows was beaten up for unknown reasons by unknown people. That doesn't, at this juncture. . . Well, he was beaten up, he was stabbed. We've got the hospital record, so that seems to be an unusual degree of corroboration, but your point really is why did he get beaten up, right? Two points. First, why did he get beaten up, by whom? And secondly, he said, I was hospitalized for 15 days, and the hospital record shows a seven-day discharge. But let's accept that as true. Okay, so what do we draw from this? You know, it's a pretty low bar if we're just talking about reopening. This guy was beaten up, this friend, and claims that they were questioning him about Baines, and your response is that's not good enough because. . . We could speculate as to many different reasons that could have happened. The trouble is. . . I mean, suppose it is true he was beaten up for that reason, then what's your position? Again, that just means the government. . . His claim back in the 90s was the government came looking for me because I was an activist, when I was a student activist. If today the government is still looking for him because he's an activist, then nothing has changed. So whether there is the Mr. Singh's affidavit means anything doesn't change anything because qualitatively the conditions are the same. And the question here is not whether Mr. Baines qualified in the 90s for asylum. He's filing. . . He wants permission to file a new claim, and he's got to introduce evidence of a material change of worsening conditions, and the agency found he didn't do that, and the record doesn't compel a different finding at this juncture. So. . . What about the question regarding the IAC contention and whether we need to find prejudice? I don't think the agency considered prejudice. So if you get to the diligence argument, you get past that, I think it goes back, and we did add a footnote. . . Under Ventura? Is that your position, that under Ventura we send it back? We put a footnote in our brief to that effect that we would say that. But addressing the due diligence argument, the claim that he brought in 2008 was a claim that he could have brought in the late 1990s. He knew. . . He said he was following the progress of his 1990s attorney, Mr. Fagan, and when he lost contact with him, he went to see other lawyers who told him, no, your appeal time has changed. So he knew. . . There's no specific year assigned to that, but it was a very long time ago that the attorney that he thought was petitioning for review hadn't. So the claim is in 2008, December 2008, is my attorney from 1998 didn't petition for review. Well, he knew that, and nothing material has changed in that regard. So. . . So his response is that he contacted a lot of lawyers, eight of them, I think. Well, sporadically, there's. . . And they all told him there was nothing he could do. I'm paraphrasing. Well, the trouble is, Your Honor, there's an 11-year gap to be covered, and he has to account for that. We don't know exactly when he talked to the first two or three lawyers, but we know it was around the late 1990s because that's when he had hired Fagan and lost contact with Fagan. Then six years go by, nothing goes. . . And he even says, I just went on with my life. Well, the agency is entitled to take notice of that and say that 11 years after an order of removal is entered, you can't just get on with your life. And that was too long. That is too long by as much as a decade, and we don't know specifically how long. Well, let me ask you, the Bi-Fin Liu case I found interesting because there the court seemed to be open to the idea that activities here in the United States could be changed circumstances in the country of nationality where there is increased threat. But there, that court said that there was no evidence that anyone in China was aware of Liu's alleged membership in and activities in support of the CDP. And so it was saying there that you could have had a case, but you lacked evidence to support the contention that anybody in China knew about your political activities here that was increasing the threat. But here, the petitioner is arguing that there was this nationwide database that he kept and that he also had this other program that he was administering. And so is this distinguishable? I believe it is, Your Honor. If you, in the record at 131 and 132, he talks about his activities back in the 90s. He was a known activist, and the police would come to his house and look for him. So he was an activist. In the case that Your Honor was discussing, there's no evidence that the person prior to coming to the United States was of any interest to the Chinese authorities. Here we have the flip side of that. He was a known activist then, assuming he's a known activist now. He's an activist to a different degree, but not in a way that is qualitatively different. He's doing different things, but he's still a Sikh activist. He was an activist. He is an activist. And this is not a case where we're trying to excuse an untimely asylum application where there's been no finding of removability. A removal order was entered. The issue here now is whether he gets to reopen and file a new claim. And for that to happen, there has to be a change, a material change, a significant change, whatever synonym we assign to that. And the Board found on this record that he didn't show a material significant change. And, again, the burden here is whether there's record evidence that compels a different finding. And I would submit that that is greatly lacking. Unless that's pretty much the issues that I wanted to bring to the Court's attention. Unless there are any other questions. I think you've identified the two issues, well-identified them. And I will yield my time then, Your Honors. The Attorney General would ask that the Board's decision be upheld. Thank you. Maybe you could concentrate on the two issues that the Attorney General outlined. One, as to the ineffective assistance of counsel, a lack of diligence over 11 years. And perhaps more important, on the reopening, whether there's a sufficient change, both home and abroad, to make a qualitative difference. I think those are his two principal arguments. Your Honor, I'll cover the first, I'm sorry, the last issue first, as the reopening. Going back to the Malti, I think Malti is really instructive in this situation. Malti is a case, which also was, I believe, a deportation case, where the Court found reopening was required under the regulation based on new circumstances. And those new circumstances were not a broad change in country conditions regarding treatment, but individualized circumstances regarding the petitioner's family arrests, detentions, things like that. And Malti is significant because it says that a motion to reopen doesn't need to establish a brand-new claim. It's basically piggybacking off of the old claim, but it's new evidence to show that now the person has a prima facie claim. Was there in the record clear evidence that in India there was knowledge of his activities here, other than inferences drawn because it was so public? Right. The record only has general statements. There are statements about Khalistani activists, that they are subject to detention and torture, even though general conditions against Sikhs have gotten better. But I'm talking about India's awareness of what the petitioner was doing in the United States. The only thing that we have is his statement that he had gotten some threatening phone calls and just the Baljinder Singh statement. But I do direct the Court to two cases that were in the reply brief, Cardenas v. INS and Aguilera Cota v. INS, which essentially say you can't expect the petitioner to give you the reasons for why he's persecuting somebody. So we can't expect the assailants against Baljinder Singh to say, we are going after you because of Jagjit Singh Bains' political activity. What we do know is Bains is a very big political activist in the U.S. His information that he publishes has international distribution, and that Baljinder Singh was visiting him in the U.S. only a few weeks earlier. When he gets back, he's then questioned and beaten and knifed by these assailants. So you're answering that an inference has to be drawn? Yes, Your Honor. There's nothing that's explicit. But again, under asylum law, there doesn't have to be an explicit statement. Counsel, you're relying heavily on Malti, and I have Malti right here. And in Malti, there was – they really, I think, had two showings. One is that there was an increased level of violence generally against Christians in Egypt and that there had been threats against his family. But I think here yours is a little different. Your situation, I think, is – unless I missed it, I don't see a showing of increased hostilities towards Sikhs generally. But you have shown, and you are arguing, that there was an increase in threats specifically targeting your client. Is that fair? Yes, Your Honor. There is record evidence to show that Khalistani activists are at risk. That's at 350. But can you show – you know, per Malti, they had a showing of increased country conditions generally vis-à-vis Christians. So my question is do you have – in that case. In this case, do you have a showing of increased hostilities generally towards Sikhs? No, it's consistent with the general treatment. I think it's the same. I also wanted to direct the court to the Valhora decision, which is 2018. Before you leave Malti, let me ask you what your answer is to this. Malti says the critical question is not whether the allegations – there's some connection to a prior application, but rather whether circumstances have changed sufficiently that a petitioner who previously did not have a legitimate claim for asylum now has a well-founded fear of future persecution. Did the petitioner here not have a legitimate claim for asylum previously? He didn't have a hearing, so we don't know. He applied – He contended he had a legitimate claim. He did. He was denied initially by immigration and then put into deportation proceedings. So are you saying he didn't have a legitimate claim? Well, he's saying he had a legitimate claim, but he never had a full due process hearing where that was explored. I understand that, but does this fall within Malti in that he is someone who did not previously have a legitimate claim? He was denied by immigration. That's all I can say. I believe he did have a legitimate claim. It's just he never had that hearing. But if you look at Valhora, which recently was issued, Valhora looks at the changed circumstances regulation for the exception to the one-year filing deadline, but it addresses that claim also. It was a case of late filing, and the government argued, well, he has to show that he would have lost if he had timely filed, and then when he filed based on changed circumstances that he would have won. And the court rejects that and says, no, he doesn't have to show he would have initially lost. He only has to show that's a stronger claim. And, again, it's looking at changed circumstances, which is the same language in the regulation at issue here. And what case is that? Valhora, Your Honor. I'll give you really fast. 641, Fed 3rd, 1038. It was just issued recently. And then just quickly going to the last issue on due diligence and ineffective assistance, the supplemental declaration that was submitted by a petitioner in the record establishes that he went to at least 14 different attorneys looking for help, and that's in the record at page 51 to 52. All 14 of those attorneys were so incompetent as to tell him he didn't have an ineffective assistance to counsel claim? For a lawyer who was paid to file a petition and didn't file it? They didn't even order the records, Your Honor. He did consultations with at least 14 different people. Is the entire immigration bar incompetent? No, Your Honor. Just those 14? No, I'm not going to say. And I don't even say that all those 14 are. But he was told what he was told, unfortunately. But he called every single attorney on the list he's given by immigration and went to see them. And he really was trying to remedy this. I'm out of time, I see. Great, thank you. Well, lucky he found you. Thank you, Your Honor. Thank you, counsel. Case just argued will be submitted.
judges: Settle, REINHARDT, CHRISTEN